UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------X

MINERVA PASCUAL,

               Plaintiff,

   - against -

S.A. MICHAEL FERNANDEZ, ET AL.,

               Defendants.

------------------------------------------X

11 Civ. 7075 (RWS)

OPINION

A P P E A R A N C E S:

    Plaintiff Pro Se

    MINERVA PASCUAL
    Inmate No. 64735-053
    FPC Route 37
    Danbury, CT 06811

    Attorney for Defendants

    UNITED STATES ATTORNEY FOR THE
    SOUTHERN DISTRICT OF NEW YORK
    86 Chambers Street, 3rd Floor
    New York, New York 10007
    By:  Louis A. Pellegrino
        Assistant U.S. Attorney

**Sweet, D.J.**


The defendants Special Agent Michael Fernandez ("Agent Fernandez"), Special Agent John Lattuca ("Agent Lattuca"), Special Agent Freddy Gomez ("Agent Gomez"), Special Agent Joseph Jerla ("Agent Jerla"), Special Agent Patricia Pliva[1] ("Agent Pliva"), Special Agent Joseph Magilton ("Agent Magilton"), Special Agent Kyle Bowdy ("Agent Bowdy") and Special Agent Gonzalez ("Agent Gonzalez") (collectively, "Defendants") have moved to dismiss plaintiff Minerva Pascual's ("Plaintiff" or "Pascual") amended complaint pursuant to Fed. R. Civ. P. 12(b)(1), (b)(5) and (b)(6) ("Rule 12(b)(1)", "Rule 12(b)(5)" and "Rule 12(b)(6)", respectively). For the reasons set forth below, Defendants' motion is granted, and the amended complaint is dismissed with prejudice.

---

[1] Pascual's complaint misspells Agent Pliva's surname as "Pelva." To avoid confusion, the correct spelling of Agent Pliva's name will be used herein.

1

**Prior Proceedings**

On September 14, 2011, Pascual filed a complaint in the Eastern District of New York alleging various constitutional violations arising from her interactions with federal agents during the course of, and in the hours following, her arrest on September 16, 2008, as part of a "controlled delivery" of narcotics that occurred in New York City. The complaint named as defendants several federal agencies, as well as a number of individual federal agents.

The case was transferred to this District on October 7, 2011, and on November 17, 2011, Chief Judge Preska issued an order in which she found that Pascual failed to state a viable claim against any of the defendants, and directed Pascual to file an amended complaint within 60 days. See Dkt. No. 8 ("Order to Amend").

On January 11, 2012, Pascual filed an amended complaint. As opposed to the initial complaint, the amended complaint did not name any federal agencies as defendants, but did name as defendants the same individual agents who were named in the initial complaint, as well as several additional

2

agents.   The amended complaint (hereinafter, "Complaint")
alleged violations of Pascual's rights under the Fourth,
Eighth and Fourteenth Amendments as well as under 42 U.S.C. §
1983.

        The allegations of the Complaint are set forth below
and are assumed to be true for the purposes of the instant
motion to dismiss.   See, e.g., Musah v. Houslanger, No. 12
Civ. 3207 (RWS), 2012 WL 5835293, at *2 (S.D.N.Y. Nov. 16,
2012).

        On September 16, 2008, plaintiff Minerva Pascual
drove her cousin to a location in northern Manhattan to meet
with a Peruvian drug dealer. See Compl. ¶¶ 3,7.  When they
arrived, Pascual waited in her car and her cousin went to meet
the drug dealer. Pascual's cousin was subsequently arrested by
federal agents (the "Agents") while he was participating in a
"rooftop rendevous [sic] with [the] Peruvian [sic] drug
courier." Id. at ¶ 7.  Following the arrest of Pascual's
cousin, the Agents approached Pascual's car and arrested
Pascual. Id.

        During the course of Pascual's arrest, a male agent,

3

Agent Fernandez, dragged her out of the car by grabbing her neck and forced her face into the car, and then handcuffed her very tightly.  Id. at ¶ 9.  Pascual was then driven to an alley around the corner from the location of her arrest, whereupon Agent Fernandez conducted a pat-down search of Pascual which involved touching Pascual's "breast, buttocks, and inner thighs."  Id.

Pascual requested to have an opportunity to relieve herself, but was told that she could not do so until she had been brought back to the Agents' headquarters.  Id. at ¶ 11.  Pascual was then driven to the Narcotics Smuggling Unit located in Queens, New York (the "NSU"), a trip that lasted 45 minutes.  Id. at ¶ 12.

Upon arriving at the NSU, Pascual again asked to use the bathroom, and in response was "threatened and verbally abused" by Agent Fernandez, who told Pascual that she would not be allowed to use the bathroom until she signed a consent form permitting a search of her car.  Id. at ¶ 13.  Pascual then gave consent for her car to be searched, and immediately thereafter Agent Fernandez ordered Agent Bowdy to take Pascual to the bathroom.  Id. at ¶ 14.  Agents Bowdy and Gonzalez then

4

drove Pascual to a building and brought her to a "holding
cell/place" where there was a toilet.  Id.   Agent Bowdy
removed Pascual's handcuffs and "allowed [Pascual] no privacy"
while she used the toilet, while Agent Gonzalez remained
outside of the room.  Id.

After Pascual used the bathroom, she was handcuffed
and escorted by Agents Bowdy and Gonzalez to the NSU office,
where she was subjected to a "cavity search/strip search" by
Agent Pliva.  Id.

Pascual was subsequently indicted for her role in
the drug transaction, and on January 23, 2009, moved to
suppress property seized from her car (the "Car Evidence") on
the grounds that her consent to search the car was involuntary
and the result of coercion.  Id. at ¶ 19.  The Court held a
hearing in April 2009, and ruled that the consent was
voluntary and therefore denied suppression.  Id.  Pascual's
ensuing trial resulted in a mistrial.  Id.

On June 9, 2010, Pascual moved to have the Car
Evidence suppressed at her second trial, but the Court denied
the motion.  Id. at ¶ 20.  At the conclusion of the second

trial on October 20, 2010, Pascual was convicted.  Id. at ¶
21.  However, Pascual remained out of prison pending her
motion to reconsider the Court's denial of her motion to
suppress the Car Evidence.  Id.  On November 3, 2010, the
Court granted Pascual's motion to reconsider, and stated that
it could not conclude that Pascual voluntarily consented to
the search of her car, and therefore withdrew that finding.
Order to Amend at 2-3.  However, the Court went on to state
that it nonetheless "s[aw] no basis to suppress" the Car
Evidence.  Id. at 3.  Following this ruling, Pascual was
sentenced on July 7, 2011.  Id.

        The instant motion was taken on submission on
October 1, 2012.

**Applicable Standard**

        On a motion to dismiss pursuant to Rule 12(b)(6),
all factual allegations in the complaint are accepted as true,
and all inferences are drawn in favor of the pleader. Mills v.
Polar Molecular Corp., 12 F.3d 1170, 1174 (2d Cir. 1993).  The
issue "is not whether a plaintiff will ultimately prevail but
whether the claimant is entitled to offer evidence to support

6

the claims." <u>Villager Pond, Inc. v. Town of Darien</u>, 56 F.3d 375, 378 (2d Cir. 1995) (quoting <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 235-36 (1974)).

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)).  Plaintiffs must allege sufficient facts to "nudge[ ] their claims across the line from conceivable to plausible." <u>Twombly</u>, 550 U.S. at 570.  Though the court must accept the factual allegations of a complaint as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." <u>Iqbal</u>, 556 U.S. at 678 (quoting <u>Twombly</u>, 550 U.S. at 555).

When a litigant is proceeding pro se, "h[er] submissions will [ ] be liberally construed and read to raise the strongest argument they suggest."  <u>Graham v. Henderson</u>, 89 F.3d 75, 79 (2d Cir. 1996).  In addition, the submissions of pro se litigants are held to "less stringent standards than formal pleadings drafted by lawyers," <u>Hughes v. Rowe</u>, 449 U.S.

7

5, 9, 101 S.Ct. 173, 176 (1980), and courts "apply[] a more flexible standard to evaluate their sufficiency tha[n] when reviewing a complaint submitted by counsel," Lerman v. Bd. of Elections in City of N.Y., 232 F.3d 135, 139-40 (2d Cir. 2000).

That being said, "pro se status does not exempt a party from compliance with relevant rules of procedural and substantive law." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006) (internal citation and quotation marks omitted).

**The Claims Against the Defendants are Dismissed**

Pascual purports to assert Bivens claims[2] under the Fourth, Eighth and Fourteenth Amendments, as well as 42 U.S.C. § 1983. See Compl. ¶¶ 2, 5. However, Pascual's allegations are limited to events that occurred incident to her arrest, such as unreasonable seizure and the use of excessive force.

---

[2] Pursuant to the Supreme Court's decision in Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), "a plaintiff may seek money damages from government officials who have violated her constitutional or statutory rights." Camreta v. Greene, 131 S.Ct. 2020, 2031 (2011).

See id. at ¶ 27.  Such claims are exclusively analyzed under
the Fourth Amendment, rather than the Fourteenth Amendment.
See Graham v. Connor, 490 U.S. 386, 394-95 (1989).  Moreover,
a Bivens claim for a Fourteenth Amendment violation does not
exist, as the Supreme Court has, to this date, created Bivens
remedies only for violations of the Fourth, Fifth and Eighth
Amendments.  Arar v. Ashcroft, 532 F.3d 157, 177 (2d Cir.
2008), overruled on other grounds, 585 F.3d 559 (2d Cir. 2009)
(en banc), cert. denied, 130 S.Ct. 3409 (2010).

     In addition, an Eighth Amendment Bivens claim is
inapposite because the Eighth Amendment only protects against
conduct that occurs after a criminal conviction, see Ingraham
v. Wright, 430 U.S. 651, 671 n. 40 (1977), whereas Pascual's
allegations concern events that occurred around the time of
her arrest, which was several years prior to her conviction.

     Finally, a claim under 42 U.S.C. § 1983 claim is
inapposite because that statute applies only to claims of a
deprivation of a constitutional right by a defendant acting
under color of state law, see Bivens v. Six Unknown Agents of
Fed. Bureau of Narcotics, 409 F.2d 718, 720 n. 1 (2d Cir.
1969), rev'd on other grounds, 403 U.S. 388 (1971), whereas

9

Pascual asserts claims against *federal* agents who were acting under color of *federal* law.

Viewing Pascual's claims liberally due to her pro se status, see Graham, 89 F.3d at 79, her allegations are therefore construed as asserting causes of action under the Fourth Amendment.  However, as set forth below, the allegations in the Complaint fail to state a Fourth Amendment claim against any of the Defendants.[3]

A.  Agent Gomez

Pascual alleges that Agent Gomez was present for a portion of her interrogation (during which Agent Fernandez allegedly acted in an abusive nature towards her), see Compl. ¶¶ 18 & 22, but does not allege that Agent Gomez acted in an inappropriate or abusive nature towards her.  Even if Pascual's allegations are construed liberally as asserting a claim of bystander liability, see Graham, 89 F.3d at 79, the claim fails since an officer is subject to bystander liability

---

[3] Since Pascual's claims fail on the merits, Defendants' arguments regarding deficient service of process, untimeliness, and the applicability of Heck v. Humphrey, 512 U.S. 477 (1994), are not addressed.

only if he fails to intercede in the face of a constitutional violation.  See, e.g., Curley v. Village of Suffern, 268 F.3d 65, 72 (2d Cir. 2001).  Since "[v]erbal harassment or profanity alone . . . no matter how inappropriate, unprofessional, or reprehensible it may seem, does not constitute the violation of any federally protected right" if, as is the case here, there was no accompanying injury, Liriano v. ICE/DHS, 827 F. Supp. 2d 264, 271 (S.D.N.Y. 2011), Pascual fails to state a claim against Agent Gomez.


B.  Agent Lattuca


Pascual alleges that Agent Lattuca took part in the interrogation in which Agent Fernandez was verbally abusive, and also that Agent Lattuca "made his own comment about my sexual preference."  Compl. ¶ 22.  As explained above, mere verbal abuse by an officer—regardless of how reprehensible the content may be—does not constitute a constitutional violation. See supra § A.  Accordingly, Pascual fails to state a claim against Agent Lattuca.

C.  Agent Magilton

Pascual alleges that (i) Agent Magilton was one of the several agents who was present at her arrest (during which Agent Fernandez allegedly used excessive force), see Compl. ¶ 8, and (ii) that Agent Magilton denied her request to use the bathroom, instead telling her "that she would have to wait until she arrived at the office."  Compl. ¶ 11.

With respect to the former allegation, even if is liberally construed as asserting bystander liability against Agent Magilton for failing to intercede while excessive force was used against Pascual by another agent, Pascual nonetheless fails to state a claim.  As set forth below, Pascual's allegations regarding Agent Fernandez's use of excessive force do not rise to the level of a constitutional violation, see infra § H(i), so Pascual's bystander claim against Agent Magilton, which is derivative of her claim against Agent Fernandez, fails as well.

With respect to the latter allegation, even if it is liberally construed as a claim for unreasonable seizure, Pascual has failed to state a claim because "[t]he temporary

12

deprivation of the right to use the toilet, in the absence of serious physical harm or risk of contamination, does not rise to the level of an objective constitutional violation." Mateo v. Alexander, No. 10. Civ. 8427 (LAP)(DCF), 2012 WL 864805, *5 (S.D.N.Y. Mar. 14, 2012); see also Steele v. County of Los Angeles, 117 Fed. Appx. 507, 508-09 (9th Cir. 2004) (holding that detaining individuals for "two to three hours" and refusing them the right to use the bathroom was not unreasonable under the Fourth Amendment); Hunter v. Namanny, 219 F.3d 825, 831 (8th Cir. 2000) (holding that a detainee does not have a *per se* right to use the toilet upon request). Since Pascual does not allege that the delay in permitting her to use the toilet resulted in serious physical harm or contamination, she fails to allege a constitutional violation arising from the denial of her request to use the bathroom.

D.  Agent Jerla

Pascual alleges Agent Jerla "witnessed the altercation(s) that occurred during her arrest" and therefore "[f]ail[ed] to protect a detainee from unreasonable warrantless arrest/seizure and failure to remedy violations while on the scene." Compl. ¶¶ 8, 24.  Liberally construed,

13

these allegations assert a bystander liability claim against Agent Jerla with respect to the alleged excessive force used during Pascual's arrest and the allegedly unreasonable search of her vehicle.  As explained below, Pascual fails to state an excessive force claim, see infra § H(i), and therefore a bystander liability claim is not viable.  In addition, the Court in Pascual's criminal case held that both Pascual's arrest as well as the search of her car were constitutionally reasonable, see Pl. Opp. Ex. p. A-574.

E.  Agent Gonzalez

Pascual asserts a bystander liability claim against Agent Gonzalez with respect to the excessive force used during her arrest, see Compl. ¶¶ 8-9, as well as a claim premised upon the refusal to permit her to use the bathroom, see Compl. ¶ 12.  The bathroom usage claim fails for the reasons stated above, see supra § C, and the excessive force claim fails for the reasons stated below, see infra § H(i).

F.  Agent Bowdy

With respect to Agent Bowdy, Pascual asserts (i) a

14

bystander liability claim premised upon the alleged excessive
force used during her arrest; (ii) a claim premised upon the
refusal to permit her to use the bathroom; and (iii) an
invasion of privacy claim premised upon her allegation that
Agent Bowdy remained in the bathroom with her while she
relieved herself.

The first two claims fail for the same reasons that
the identical claims asserted against Agent Gonzalez fail.
See supra §§ H(i) & C.  The third claim fails because Agent
Bowdy's accompaniment of Pascual to the bathroom was for a
legitimate security purpose, see Compl. ¶ 15, and therefore is
not a constitutional violation.  See, e.g., Johnson v. Phelan,
69 F.3d 144, 146 (7th Cir. 1995) (holding that there was no
constitutional violation when guards of the opposite sex
observed pretrial inmates in the shower and toilets).

## G.  Agent Pliva

Pascual's claim against Agent Pliva is based upon
her allegation that Agent Pliva (who is female) performed a
strip search and body cavity search of Pascua.  See Compl. ¶
18.  Although a strip search may rise to the level of a

15

constitutional violation "in the absence of particularized reasonable suspicion" that the target of the search is "carrying drugs or contraband," <u>Sarnicola v. County of Westchester</u>, 229 F. Supp. 2d 259, 270 (S.D.N.Y. 2002), here there was ample cause for Agent Pliva to be suspicious that Pascual was carrying drugs, since Pascual had just been arrested for taking part in a drug deal.  Furthermore, Pascual acknowledges that the search took place in a private area outside the view of any male agents, and does not allege that the search was conducted in an unreasonable or abusive manner. <u>See</u> Compl. ¶ 19.  Accordingly, Pascual's claim against Agent Pliva fails.


H.  Agent Fernandez


        Pascual alleges Fourth Amendment violations against Agent Fernandez arising from (i) excessive use of force in connection with Pascual's arrest, see Compl. ¶ 9; (ii) and inappropriate pat-down search following her arrest; (iii) denial of bathroom access; and (iv) verbal abuse.  For the reasons stated below, Pascual fails to state a claim for any of these alleged violations.

16

*(i) Excessive Force*

Fourth Amendment claims regarding excessive use of
force are evaluated under a reasonableness standard. Graham,
490 U.S. at 394.  Under this standard, the reasonableness of a
particular use of force must be determined from the
perspective of a reasonable officer at the scene of the
incident, rather than with "20/20 vision hindsight."  Id. at
396.  Relevant factors in this analysis are (1) the severity
of the crime at issue; (2) whether the suspect posed an
immediate threat to the safety of the officers or others; and
(3) whether the subject of the use of force is actively
resisting arrest or attempting to evade arrest.  Id.
Additionally, in order to recover under an excessive force
claim, a plaintiff must claim to have been injured to some
degree.  Landy v. Irizarry, 884 F. Supp. 788, 799 n. 14
(S.D.N.Y. 1995).

In Pascual's description of her arrest, she alleges
that Agent Fernandez "used excessive restraint of movement by
physically grabbing me by my neck and forcing my face to the
car," and also "put very tight hand cuufs [sic] on me behind

17

my back." Compl. ¶ 9.  Since Pascual alleges no actual injury
resulting from Agent Fernandez's actions, she fails to state a
constitutional claim for use of excessive force.

*(ii) Pat-Down Search*

As a matter of course, an officer may subject an
arrestee to a full search incident to the arrest, provided
that there was probable cause for the arrest.  U.S. v.
Robinson, 414 U.S. 218, 235 (1973).  Since Pascual was
arrested while taking part in a drug deal, there was probable
cause for her arrest, and therefore Agent Fernandez's decision
to conduct a pat-down search of Pascual incident to the arrest
is reasonable *per se* under the Fourth Amendment.

Pascual complains that Agent Fernandez's search was
inappropriate because during the course of the search, Agent
Fernandez touched her "breast, buttocks and . . . inner thighs
area," and that it was completely inappropriate for a male
officer to touch her in those areas.  Compl. ¶ 9.  However,
the mere fact that a pat-down search was conducted on a female
detainee by a male officer is not sufficient to give rise to a
constitutional violation, absent any allegation of otherwise

18

improper conduct.  See Golden v. County of Westchester, No.

10-CV-8933 (ER), 2012 WL 4327652, *6 (Sept. 18, 2012).  Here,

Pascual does not allege any improper conduct, as she merely

asserts that Agent Fernandez searched the areas of her body

that were covered by clothing, which are precisely the areas

that it would be reasonable for an officer to touch in the

course of a search.[4]

*(iii) Denial of Bathroom Access*

        As explained above, Pascual's allegations regarding

the denial of her requests to use the bathroom do not rise to

the level of a constitutional violation.  See supra § C.

    *(iv) Verbal Abuse*

        As explained above, mere words—no matter how

hurtful, intimidating or reprehensible they may be—cannot

---

[4] Pascual's contention that it was unreasonable for Agent
Fernandez to search her because her clothing was so minimal
that it could not have possibly been hiding contraband is
unavailing, as items such as drugs, which are often carried in
very small quantities, can be concealed even under the type of
clothing that Pascual alleges she was wearing at the time of
her arrest.  Cf. Rodriquez v. Furtado, 771 F. Supp. 1245,
1256-57 (D. Mass. 1991).

19

serve as the basis for a constitutional claim against an
arresting officer.  See supra § A.

          *          *          *          *          *

     When a motion to dismiss is granted, "[i]t is the
usual practice . . . to allow leave to replead."  Schindler v.
French, 232 Fed. Appx. 17, 19 (2d Cir. 2007) (quoting Cortec
Indus., Inc. v. Sum Holding P.P., 949 F.2d 42, 48 (2d Cir.
1991)).  However, Pascual was already given an opportunity to
replead after filing her initial complaint, and was even
instructed specifically on the nature of the allegations she
needed to include in order to make her claims viable.  See
Order to Amend.  The fact that Pascual's amended complaint
still fails to state a claim against any of the Defendants
indicates that an additional attempt at repleading would be
futile.  Accordingly, leave to replead is denied, and the
amended complaint is dismissed with prejudice.  See Rivera v.
Salomon Smith Barney, No. 01 Civ. 9282 (RWS), 2003 WL 222249,
at *3 (S.D.N.Y. Jan. 30, 2003) (citing Mooney v. Vitolo, 435
F.2d 838, 839 (2d Cir. 1970)).

**Conclusion**

       For the reasons set forth above, the Defendants' motion to dismiss is granted with prejudice.

       It is so ordered.

**New York, NY**
**January 28 , 2013**

ROBERT W. SWEET
U.S.D.J.

21